82　213
130　430

# Strong *v.* Taylor.

*Creditors' Bill for Settlement of Assignment; Decretal Order of reference as to Fees of Complainant's Solicitor.*

1. *Allowance of fees to complainant's solicitor, under creditors' bill.* When a bill in equity is filed by one creditor, on behalf of himself and all other creditors who may come in, asking the court to assume jurisdiction of an assignment made by the debtor for the benefit of his creditor, to require the trustee to give bond, and to have the trust administered and settled under the orders and supervision of the court; and the trustee, in his answer, submitting to the jurisdiction of the court, admits the propriety and necessity of the bill, and executes bond under the order of the court; the creditors who come in, under an order of reference, and prove their claims, may be required to contribute to the fees allowed the complainant's solicitor, and can not be heard to say that the bill was unnecessary, or unprofitable; but, if contests arise among the different creditors, some claiming liens and priorities, which are resisted by the trustee and the other creditors, complainant's solicitor can not claim an allowance out of the general fund, for services rendered in resisting these several claims.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 12th November, 1884, by James McPhillips, as a creditor of the Danner Land & Lumber Company, an insolvent private corporation, on behalf of himself and all other creditors who might come in as parties and contribute to the expenses of the suit, against the said corporation, and against J. C. Strong, the trustee in a deed of assignment executed to him by said corporation, for the benefit of its creditors; and asked the court to assume jurisdiction of the assignment, to require the trustee to give bond for the faithful performance of his duties, and to administer and settle the trust created by the assignment. A decree *pro confesso* was duly entered against the insolvent corporation, and an answer was filed by Strong, the assignee, admitting the propriety and necessity of the bill, and submitting to the jurisdiction of the court. A decretal order was afterwards rendered assuming jurisdiction of the trust, requiring the trustee to give bond, and ordering a reference of matters of account to the register. Under this reference, more than ninety creditors

[Strong v. Taylor.]

filed their claims, and most of them were allowed; but contests arose as to the claims of several creditors who claimed liens and priorities. Notably among these contested claims were the claims of the Stonewall Insurance Co., Shadboldt & Sons, and others, who claimed liens for large debts; which were contested by the complainant's solicitor, and also by the solicitor of the trustee. On the 28th June, 1886, after most of these contested matters had been decided, a petition was filed in the cause by Hannis Taylor, the solicitor of the complainant in the original bill, asking a reference to the register to ascertain and report what would be a reasonable fee for his services in the cause, to be paid out of the funds in the hands of the trustee. The petition was not contested, but, on the reference before the register, the creditors objected to an allowance to the complainant's solicitor, for services rendered in contesting the claims of Williams, Deacon & Co., Geo. Shadboldt & Son, and others; and this matter was brought before the chancellor, on exceptions to the register's report. The chancellor overruled the exceptions, and confirmed the register's report; and his decree is now assigned as error.

PILLANS, TORREY & HANAW, and R. H. CLARKE, for the appellant.— The bill was unnecessary, and unprofitable: it created no fund, increased no fund, and brought none under the jurisdiction of the court which would otherwise have been lost to the creditors.—*McPhillips v. Jones*, 77 Ala. 314. As to the contests among the creditors, and with parties claiming liens or priorities, the trustee represented the trust estate generally, and each creditor represented his own interest; and the complainant's solicitor, representing his own client, can not claim compensation from the others.—*O'Connor v. Boyd*, 73 Ala. 385; *Grimball v. Cruse*, 70 Ala. 534; *Trustees v. Greenough*, 105 U. S. 527; *Central Railroad v. Pettus*, 113 U. S. 116; Perry on Trusts, §§ 894, 910, 912; 2 White & Tudor's L. C. Eq., 238.

HANNIS TAYLOR, *pro se.*—Whenever a general creditors' bill is properly filed, and a general decree rendered under it, all the creditors who come in, prove their claims, and participate in the general fund, should be taxed with a part of the costs of the creditor who filed the bill, including a reasonable solicitor's fee, the amount of which, in each case, is to be determined by the character and value of the services rendered. If, by successful litigation, the solicitor increases the fund, or, what amounts to the same thing, successfully resists claims preferred against it, his fee

should be proportioned to the amount of the fund thus rescued and preserved, and the value of his services. This is the rule laid down by the authorities.—*Mason v. Codwise*, 6 John. Ch. 297; *Brown v. Bates*, 10 Ala. 432; *Grimball v. Cruse*, 70 Ala. 534; *Morton & Bliss v. Railroad Co.*, 79 Ala. 624; 105 U. S. 527; 113 U. S. 116.

CLOPTON, J.—There are well-defined cases, in which a court of equity may properly determine the amount of compensation to which solicitors are entitled, and order its payment from funds under the control of the court. Reasonable expenses, including a proper fee for his attorney, incurred by a trustee in good faith in the bringing and prosecution of a suit, to which he is compelled to resort in order to preserve intact, or to recover the trust estate, and thereby restores or saves it, and brings it into court for administration, will be charged against, and paid from the trust fund, on the principle that the estate must bear the expenses of its administration. On the same principle, where one of several beneficiaries, for the joint and equal benefit of himself and all others occupying like position, brings a bill to protect the trust estate against waste or destruction, arising from the *misfeasance* or *nonfeasance* of the trustee, and succeeds in bringing it under the control of the court for administration according to the uses and purposes of the trust, all having a common interest in the subject-matter, who come in, and participate in the benefits of the litigation, will be required to contribute proportionally to the expenses, which contribution may be equitably enforced by making them a charge on the fund. The rule is founded in natural equity—the distribution of the burdens among those to whom the benefits accrue.— *Trustees v. Greenough*, 105 U. S. 527; *Morton v. N. O. & Sel. Railway Co.*, 79 Ala. 590.

As to the argument of appellant, that the suit is fruitless —without beneficial effect—it may be remarked, that, ordinarily, there should be some estate or fund discovered or rescued, which otherwise would be beyond the reach of the parties interested, and that parties should not be required to contribute to the expenses of a barren litigation. In such case, however, the *onus* may be avoided by not coming in when there are no benefits in which they may participate. The Danner Land & Lumber Company, October 31, 1884, made a general assignment of all its property and assets to appellant, for the equal benefit of its creditors, conferring large discretionary powers. In November thereafter, James McPhillips, one of the creditors, in behalf of himself and

all other creditors who might make themselves parties and contribute to the expenses of the suit, filed the bill to bring the trust property under the jurisdiction and administration of the court, and to require bond of the assignee; who answered without objection by demurrer or otherwise. In his answer he expressed willingness to give bond, and stated as follows: "It is the desire of respondent to submit himself, in the conduct of the execution of said trust, to the direction and supervision of the court, and to have its aid in the matter; and he accordingly joins the complainant in his prayer that the court take jurisdiction of the same, and that he may be supervised and directed by the court in the ascertainment of who are the creditors of the company, and in all other needful matters not provided for by the said deed of assignment." On the bill and answer, the court made an order, that all the creditors of the company file their claims and demands, verified by affidavit, with the register by a specified day; and referred it to the register to ascertain who are the creditors; the amounts due to them respectively; the nature and character of their claims; who, if any, are entitled to priority in payment; whether there are any liens or incumbrances on any of the trust property, and the nature thereof. Under this order, about ninety creditors filed claims, which were allowed and reported by the register; and his report was confirmed. Other proceedings were subsequently had in the case.

The necessity of the bill, it seems, was admitted by the assignee, who contemplated filing a bill to invoke the aid and direction of the court. Whatever might have been considered in regard to the sufficiency of the bill, if objection had been made, the suit has passed beyond the domain of pleading, to adjudication; and its necessity, and the equity of the bill, are beyond the range of inquiry, so far as relates to the incidental and collateral question raised on this appeal. Taking jurisdiction by the court, the administration of the trust estate under its supervision and direction, and bond from the assignee, may, under the circumstances of the trust, be considered beneficial, in that the true beneficiaries have assurance that the trust property will be preserved and faithfully administered, and its misapplication to the payment of claims not justly due prevented,—matters in respect to which each creditor has the right and opportunity to be heard. The creditors, who were permitted by the court to come in, and avail themselves of the benefits of the suit, by filing and proving their claims, thus making themselves parties, constituted the solicitor of complainant, *pro hac vice*, their solicitor, and

[Strong v. Taylor.]

his proper and reasonable fees a charge on the fund, especially as the assignee forbore to file a bill because of the institution of the present suit.

But, for what services, and to what extent, may the fees be charged? The courts, while observing principles of equity, and a fair consideration of the value and utility of the services rendered, should be cautious not to award excessive or improper allowances, whereby just criticism may be provoked. A controlling rule should be, to avoid charges unnecessarily, however honestly, accumulated, and to confine the allowance within the limit of the resultant benefits ensuing equally to all having a common interest, and of which all must necessarily avail themselves. When the special interest of a party to a suit is involved, though his attorney, in representing him, must incidentally represent others having a like special interest, and though his services may be valuable, those who have not employed him will not be required to contribute to the payment of his fees. On a creditor's bill, or a bill filed by a *cestui que trust* to rescue trust property, the fees of the solicitor of complainant, accruing in the preparation and conduct of the suit to a decree of condemnation, or of rescue and restoration, as the case may be, will generally be charged on the fund; for, to this extent, the others having similar interests proportionally avail themselves of his labor, skill and diligence in discovering and making it available. After the fund or property has been brought in, and made available by decree of the court, and nothing remains but its proper administration and distribution, contests which may arise between claimants in respect to priorities, or the right to share, are individual contests, involving antagonistic interests.— *Grimball v. Cruse,* 70 Ala. 534.

When the bill was filed, there was no apparent, immediate or threatened danger of waste or destruction. The trustee had been guilty of no neglect or misconduct, and no property was discovered and rescued, or restored to the purposes of the trust. The sole purpose of the bill was to bring the estate within the jurisdiction and under the administration of the Chancery Court, and procure bond from the assignee; and for this purpose, the creditors have presumably regarded the suit as beneficial. The fees of complainant's solicitor, in preparing and filing the bill, and taking the necessary and proper orders to accomplish the purposes of the suit, may be properly charged on the estate. But, by the order of the chancellor, the assignee, the complainant, and any other creditor, who may have come in and filed his claim, was authorized to file objections to, and con-

test the claims of any others preferring demands against the company. After the estate was brought in, it was and continued, primarily, the duty of the assignee, occupying an indifferent and impartial relation to all claimants, to protect it against unjust demands ; but, to prevent any failure in this respect, the authority to object and contest was conferred on the creditors, whose special and separate interests were involved. The attorney of any creditor has the same right and authority to contest as the attorney of complainant. Had any creditor, other than complainant, inaugurated a contest, the costs of such contest could not have been adjudged against the non-contesting creditors, either directly or indirectly, by creating a charge on the common estate, though they may participate in its benefits. The complainant, in this respect, has no other or different right. The contests arising on the petition of the Stonewall Insurance Company, and Shadbolt & Son, come within this class of services. As respects complainant, they may be regarded as practically and virtually objections to the offer to come in and become parties under the invitation of his bill, and as contests in his individual interest to increase his share of the trust estate. If the costs and expenses, accruing from litigation between the several claimants, alone relating to the distribution of a fund already under the control of the court, were allowed as charges thereon, the estate, in many cases, would be thereby consumed. We are forced to hold, that the compensation allowed petitioner for these services was improper. This necessitates another reference to ascertain the amount reasonable and proper to be allowed in accordance with this opinion.

Reversed and remanded.